SMITH *v.* BATTJES FUEL & BUILDING MATERIAL CO.

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—DISCON-
   TINUANCE OF COMPENSATION—INJURIES FROM MALPRACTICE—EVI-
   DENCE—FINDING OF INDUSTRIAL ACCIDENT BOARD.

   In proceedings under the workmen's compensation law by
   the employer and insurer to discontinue the payments
   made by the latter under said act, evidence that the
   total disability of plaintiff's arm might have been caused
   by the original fracture received in the course of his
   employment, however skillfully the arm was treated by
   the surgeon who reduced the fracture, *held*, sufficient to
   support the finding of the industrial accident board that
   plaintiff was entitled to continue to receive said payments,
   notwithstanding the physician who treated plaintiff had
   compromised a suit started by him for malpractice by
   the payment of a substantial sum.

2. SAME—ADMISSIONS—EVIDENCE—QUESTION FOR BOARD.

   Averments in plaintiff's declaration in his suit for malprac-
   tice that the condition of his arm was the result of mal-
   practice and not of the original accident were not con-
   clusive against him in these proceedings, but might be
   considered by the board in connection with all the other
   evidence in the case.

3. SAME—AGGRAVATED INJURY—RELEASE OF EMPLOYER.

   The employer or its insurer is not entitled to be credited
   on the amount due to an injured employee a sum received
   by such employee from a physician for alleged malprac-
   tice in the treatment of the injury for which compensation
   is being paid, in the absence of any such provision in
   the workmen's compensation act.

Certiorari to Industrial Accident Board. Submit-
ted October 15, 1918. (Docket No. 54.) Decided De-
cember 27, 1918.

Elmer L. Smith presented his claim for compensa-
tion against the Battjes Fuel & Building Material

See notes in L. R. A. 1916A, 23; L. R. A. 1917D, 80.

Company for injuries received in defendant's employ. From an order denying petitions for the discontinuance of payments under an award, defendant and the State accident fund bring certiorari. Affirmed.

*Thomas, Shields & Silsbee,* for appellants.

*Wykes & Averill,* for appellee.

In April, 1915, claimant, while in the employ of defendant Battjes Fuel & Building Material Company, received an accidental injury in which his right arm was broken in at least two places, accompanied by a partial dislocation of the elbow joint. The injury was attended by one Dr. Wedgewood, who was called by the superintendent of the defendant company. On May 28, 1915, a written agreement was entered into between the claimant and the commissioner of insurance (the risk being carried by the State accident fund), by the terms of which claimant was to receive $6.49 per week during disability. The State accident fund paid under this agreement for 124 weeks or up to about September 1, 1917, when further payments were discontinued for the reason that claimant refused to submit to an operation. In the meantime and on January 29, 1916, claimant becoming convinced that the then condition of his arm, which was entirely useless, was due to malpractice on the part of the attending physician, Dr. Wedgewood, brought suit against said Wedgewood in the circuit court for Kent county. On March 27, 1916, this suit was settled by Dr. Wedgewood, the consideration for said settlement being the sum of $2,125, paid by him to claimant. Two petitions were filed with the industrial accident board by defendants praying for the right to cease making further payments, the first on September 11, 1917, upon the ground that claimant refused to submit to a sur-

gical operation which it was alleged would cure or improve the condition of his arm; the second on the 1st of December, 1917, upon the same ground with the added grounds that claimant had received a second injury in the month of August, 1917, and that he had received the sum of $2,125 from the doctor on account of malpractice in connection with the first injury for which he claims compensation. The testimony of some eight or nine doctors was taken by the board upon the hearing of these petitions and an order was entered by the board denying both of them, the board finding:

1st. That the present condition of claimant, which is one of total disability, is due to the original accident and not to any malpractice.

2d. That claimant's refusal to submit to proposed surgical operations upon his arm under the testimony in the case is not unreasonable.

3d. That his receipt of the money from Dr. Wedgewood did not constitute an election within the meaning of section 15, part 3 (2 Comp. Laws 1915, § 5468), or of section 1, part 6 (2 Comp. Laws 1915, § 5488), of the workmen's compensation act.

4th. That the allegations in his declaration filed against Dr. Wedgewood are not binding and conclusive upon claimant, but may be considered as evidence only.

Defendants review the question in this court and contend for the following propositions:

"1. That by starting the malpractice suit claimant elected to hold Dr. Wedgewood for all damages accruing after the time his arm, under normal conditions, would have healed, and by such election released the State accident fund from all payments thereafter, or at least, from all payments accruing after the settlement of said suit.

"2. That if the State accident fund is not, on account of the malpractice suit, released from further payments, it is, nevertheless, entitled to have the amount received by claimant from Dr. Wedgewood

applied *pro tanto* to the total compensation which the State accident fund may have to pay."

BROOKE, J. (*after stating the facts*). It is conceded by counsel for appellants that:

"Dr. Wedgewood's liability grew out of conditions which section 15, part 3, does not cover. It is our contention, however, that the doctrine of election as followed generally is applicable to this case and that section 15, of part 3, may be useful as showing the general policy of the law as intended to be applied to workmen's compensation cases."

In this connection it is urged that in the suit against Dr. Wedgewood claimant took the position that his present condition of total disability is due solely to the alleged malpractice of Dr. Wedgewood; that he fraudulently abstained from communicating the fact that he received upwards of $2,000 from Dr. Wedgewood to the officers of the State accident fund, and continued to receive from that fund his weekly payment of $6.49; that the position assumed by claimant at this time is of necessity inconsistent with the one taken by him in his suit against Dr. Wedgewood and that having elected to look to Dr. Wedgewood he should therefore now be held to have abandoned any other source of compensation. In this connection it is said:

"When claimant received $2,125 in payment for his injuries, did he not by that act receive full and complete compensation for the then condition of his arm? If he did he most surely could not expect compensation from the State accident fund, as he had been fully compensated by:

"(a) The State accident fund for the original injury and by

"(b) Dr. Wedgewood for the injury caused by the malpractice.

"If this view is correct, then there should be no further compensation paid. In fact, the State acci-

dent fund should have an action back against Smith for that portion of the compensation which they have paid him since the institution of the suit for malpractice."

In support of the position taken, counsel cite the case of *Ruth* v. *Witherspoon-Englar Co.*, 98 Kan. 179 (L. R. A. 1916E, 1201, 157 Pac. 403), the headnote of which follows:

"In an action under the workmen's compensation act a recovery can be had only upon the basis of disability to labor resulting from the injury received in the course of employment, without the intervention of an independent cause, the separate consequences of which admit of definite ascertainment. It cannot be augmented by the fact that the disabling effects of the injury are increased or prolonged by incompetent or negligent surgical treatment, even where the employer is responsible therefor."

See, also, *Della Rocca* v. *Stanley Jones & Co.*, Ct. of Appeal, England, Jan. 21, 1914, W. C. & Ins. Rep. 34; annotated in 6 Neg. & C. C. A. 624, and *Humber Towing Co.* v. *Barclay*, 5 B. W. C. C. 142 (1911). The difficulty in applying the principle announced in the cases cited to the case at bar lies in the fact that here upon the hearing on the petition there was testimony of physicians to the effect that claimant's present condition of total disability:

"was entirely due to the original injury in 1915 and that such injury was the proximate cause of his present condition."

Another physician testified:

"I would consider Mr. Smith totally disabled, and that this condition of total disability is due in large part to the original injury in April, 1917 (1915?). Approximately the original injury was the cause of his resulting present physical condition. I would state that even if this doctor who treated this arm in the summer of 1915 had done the best that could ordi-

narily be done by a careful, skilled, prudent, physician this arm would still, or might reasonably still, at the present time, be in a condition resulting in total disability."

There was other medical testimony before the board from which, if believed by the board, it would appear that by submitting to an operation or operations the condition of·plaintiff's arm would be greatly improved and that thereby he might regain from 25 to 50 per cent. of its normal use. This court, however, does not concern itself with the determination of questions of fact when there is any competent testimony supporting the conclusions reached by the board. In the light of the statements of the physicians quoted above it can hardly be said that there was no testimony in the case warranting the board in concluding that the claimant's present condition of total disability is due to the original accident.

Not complicated, therefore, with claimant's action against Dr. Wedgewood, the order of the board denying the petition should be affirmed. Does the fact that claimant started suit against Dr. Wedgewood by declaration in which he averred that his condition of total disability was the result of malpractice and not of the original accident, estop him from now asserting that such condition is due to the original injury? We are of opinion that the board was correct in holding that the averments of the declaration were not conclusive as admissions against the claimant, but might be considered by the board as evidence in connection with all the other evidence in the case. *Ruth* v. *Witherspoon-Englar Co., supra.*

The only question remaining is whether defendant State accident fund should have credit for the $2,125 received by the claimant from Dr. Wedgewood in reduction of the amount due from it to claimant under the terms of the statute. Our law makes no provision

for the application of sums received by a claimant from a third party not connected with the original accident in reduction of the master's liability under the act. If such an application should be made it is a matter for legislative action rather than judicial interpretation.

The order of the board stands affirmed.

OSTRANDER, C. J., and BIRD, MOORE, STEERE, FELLOWS, STONE, and KUHN, JJ., concurred.