19338.   ZANT *v.* UNITED STATES FIDELITY & GUARANTY CO. *et al.*

DECIDED JUNE 17, 1929.

*Ulmer & Dowell,* for plaintiff.
*Lawrence & Abrahams,* for defendant.

STEPHENS, J. (After stating the foregoing facts.) The right of the employer and the insurance carrier to suspend the payments of compensation, after compensation has been awarded by the industrial commission, or agreed upon with the approval of the commission as in this case, is found in section 26 of the workmen's compensation act, approved August 17, 1920 (Ga. L. 1920, p. 167, 181). This section of the act, after providing for furnishing by the employer to the injured employee such necessary medical attention as the nature of the accident may require, provides further that, "during the whole or any part of the remainder of disability resulting from the injury, the employer may, at his own option, continue to furnish or cause to be furnished, free of charge to the employee, and the employee shall accept, an attending physician, unless otherwise ordered by the industrial commission, and in addition such surgical and hospital service and supplies as may be deemed necessary by said attending physician or the industrial commission," and that "the refusal of the employee to accept any medical, hospital, or surgical service when provided by the employer, or on order by the industrial commission, shall bar said employee from further compensation until such refusal ceases, and no compensation shall at any time be paid for the period of suspension unless in the opinion of the industrial commission the circumstances justified the refusal, in which case the industrial commission may order a change in the medical or hospital service."

While section 26 of the workmen's compensation act provides literally that "the refusal of the employee to accept any medical, hospital, or surgical service when provided by the employer" will bar the employee from "further compensation until such refusal ceases," it further provides that "no compensation shall at any time be paid for the period of suspension unless in the opinion of the industrial commission the circumstances justified the refusal." Section 28 of the act provides that "no compensation shall be payable for the death or disability of an employee if his death be caused by, or in so far as his disability may be aggravated, caused or continued by an unreasonable refusal or neglect to submit to or follow any competent or reasonable surgical treatment." It is therefore clearly within the contemplation of the act that the refusal of the injured employee to accept medical, hospital, or surgi-

cal service, when provided for him by the employer, will not bar the employee from the receipt of further compensation which has been awarded him, where the refusal of the employee to accept such tendered service is "reasonable" or is, under "the circumstances, justified." While it is expressly provided in the act that what constitutes a justification for the injured employee's refusal to accept the medical, hospital, or surgical service tendered him by the employer is determinable by the industrial commission, the act nevertheless contemplates that the injured employee's refusal to accept the service tendered does not operate to bar him from further compensation if the refusal is in fact reasonable or is, under the circumstances, justified.

The power given by the act to the commission, to determine whether the injured employee's refusal to accept the medical, hospital, or surgical services tendered by the employer is justified, is not, under a proper construction of the act, an arbitrary power, but is a power which can be exercised by the commission only after an inquiry into and a consideration of all "the circumstances," in order to determine whether the injured employee's refusal to accept the tendered services is justified. This power can be legally exercised only after a consideration of evidence, and is therefore in its nature judicial. It follows, therefore, that any judgment or order rendered pursuant to this power is erroneous and illegal, unless supported and sustained by competent legal evidence. Where such a judgment or order is in its nature final, as is an order denying compensation upon the ground that the refusal of the injured employee to accept the surgical services tendered him by the employer is unreasonable and unjustified, the judgment is, under the provisions of section 59 of the act, subject to review on appeal to the superior court, and should there be set aside if "there is not sufficient competent evidence in the record to warrant the industrial commission in making the order."

In this case the industrial commission held that the injured employee was not justified in refusing to accept the surgical treatment tendered him by the employer, and denied compensation. The undisputed evidence adduced upon the hearing, and upon which this order was predicated, as appears from the statement of facts recited, supra, was that the surgical treatment tendered to the injured employee by the employer was that the employee's leg,

which had been broken and treated by the physician furnished by the employer, should be rebroken and reset, and that this tendered surgical service was refused by the employee. The physician who treated the injured employee, and whose services, for the purpose or rebreaking the employee's leg, were tendered to the employee by the employer, did not testify. Only two physicians testified, and it does not appear that either of them had made any personal examination of the injured employee, other than the fact that one of them had taken an x-ray photograph of the injured leg. This latter physician testified that the proper method of treatment for the employee's injured leg was to open the leg and scrape the bone,— an operation entirely different from that of rebreaking the leg, which was the surgical treatment tendered by the employer. This physician nowhere in his testimony recommended the rebreaking of the leg, but did testify that such an operation was extremely dangerous, and that he doubted very much whether a union of the bone resulting from a second operation would be as good as a new union. The other physician who testified expressly stated that he would not recommend the rebreaking of the leg, that in such an operation there is no absolute certainty of success, that the degree of success in such an operation, in his opinion, would be about "fifty per cent." He testified also that this operation was very dangerous, that he had been present at three or four of such operations, and that all of the subjects had died except one, and that the leg of the person who recovered was not benefitted by the operation.

The evidence is therefore conclusive and without dispute that the surgical treatment tendered by the employer to the injured employee, namely, the rebreaking of the employee's leg, was an operation which would endanger the employee's life, and which from its nature must necessarily be accompanied with great physical and mental pain, that the chances of a benefit to the injured employee did not exceed 50 per cent., and therefore there was no reasonable expectancy that the operation would be a success and would thereby reduce the compensation, and none of the physicians who testified would recommend it.

The reduction of the effect of an injury, and the consequent reduction in the amount of compensation payable by the employer therefor, is the only interest which the employer has in requiring

an injured employee, who is entitled to compensation, to undergo an operation for the purpose of relieving the injury. Molamphy v. Sheridan, 47 Ir. L. T. 250. Where there appears no reasonable prospect that the surgical treatment tendered the injured employee will afford the employee any relief from the injury, and therefore no reduction in the amount of compensation payable to the employee would result, the injured employee will not be compelled to undergo an operation, accompanied with great pain and suffering and danger to life or health, solely to benefit his employer or the insurance carrier pecuniarily by way of reduced compensation. The law gives the injured employee compensation for his injury, and he is entitled to receive the compensation, unless the injury, and the compensation payable as the result thereof, can be reduced and minimized by reasonable medical or surgical treatment that can reasonably be expected to afford some relief from the injuries received, without extraordinary pain to the injured employee and danger to his life or health. The compensation act, which is designed as a humanitarian measure for the purpose of affording compensation in the nature of insurance to injured employees, does not contemplate that the reduction in compensation, by means of medical or surgical treatment extended by the employer to the injured employee, should be accomplished with reference solely to the material and pecuniary benefits to the employer or the insurance carrier, and without regard to humanitarian considerations. The injured employee is not a machine which has become broken in the performance of its duties in industry, and which can be torn to pieces and experimented with solely for the purpose of rendering it fit to perform material services and produce pecuniary rewards for the person in whose service he is employed. He is not an animal to be vivisected for some one's material gain. He is not a guinea pig to be experimented upon by doctors. He is a human being, entitled to compensation for his injury, and the right of his employer to have him repaired, so to speak, by giving him medical or surgical treatment, is but an incidental and subsidiary right of the employer by which the compensation payable by the employer might be reduced or minimized, and must necessarily be exercised by the employer with due regard not only to the injured employee's right to compensation under the act, but with due regard and consideration for the injured employee's right as a human

being not to be subjected to, or compelled to undergo, pain and suffering, or to jeopardize his life or endanger his health, merely for the pecuniary advantage of another.

The only reasonable inference therefore that can be drawn from the undisputed testimony is that the refusal of the injured employee to accept from the employer the operation tendered was reasonable and justified, and that the judgment of the commission, that the refusal of the injured employee to accept this operation was not justified, is without evidence to support it and is contrary to law.

The right of the injured employee to refuse, without forfeiting his right to receive compensation, medical or surgical treatment tendered him by the employer, where the treatment tendered is dangerous to life or health and is accompanied with extraordinary pain and suffering, and where it does not appear that the treatment tendered could reasonably be expected to relieve the injury and thereby reduce the amount of compensation, seems to be sustained by all the authorities. In support of this proposition, see a collection of American and English authorities cited in an annotation to a reported case beginning on page 1261 of 6 A. L. R. We quote from this annotation as follows: "In Rothwell v. Davies (1903), 19 Times L. R. (Eng.) 423, compensation was held not to be barred because of the refusal of a workman to undergo an operation, which, although probably successful, would be attended with a certain amount of risk. And in Vonnegut Hardware Co. v. Rose (1918), [68 Ind. App. 385] 120 N. E. 608, an award of compensation for the death of a workman was sustained, notwithstanding his refusal to submit to an operation, where some of the evidence tended to show that the operation contemplated was a dangerous one. . . In McNally v. Hudson & M. R. Co. (1915), 87 N. J. L. 455 (95 Atl. 122, 10 N. C. C. A. 185), the court stated that it could not be properly said that, where it appears that a risk of life is involved, the refusal of the prosecutor to submit to an operation is unreasonable. In speaking of the duty of an employee to submit to an operation, the court said: 'Although the peril to life seems to be very slight,—48 chances in 23,000—nevertheless the idea is appalling to one's conscience that a human being should be compelled to take a risk of death, however slight that may be, in order that the pecuniary obligation

created by the law in his favor against his employer may be minimized.' . . . In Tutton v. The Majestic (1909), 2 K. B. (Eng.) 54, 78 L. J. K. B. N. S. 530, 100 L. T. N. S. 644, 25 Times L. R. 482, 53 Sol. Jo. 447, it was held that a workman who, in good faith and upon the advice of his own doctor, refuses to have an operation performed, can not be said to be acting unreasonably. Again, there is no unreasonable refusal to submit to an operation precluding compensation, where the evidence shows that but little, if any, benefit would result therefrom. Thus the refusal to submit to a slight operation, although unreasonable, will not preclude an award of compensation to the workman for the loss of his finger, where it is not clear that the operation would have saved it. Marshall v. Orient Steam Nav. Co. (1910), 1 K. B. (Eng.) 79, 79 L. J. K. B. N. S. 204, (1909) W. N. 225, 101 L. T. N. S. 584, 26 Times L. R. 70, 54 Sol. Jo. 50, 3 B. W. C. C. 15. . . It would be unreasonable to require an injured workman to submit to an operation upon his hand, where, according to the expert testimony, it would be ' pretty close to being permanently incapacitated for use even after this operation,' and there was doubt as to the time within which some uncertain and indeterminate degree of benefit reasonably might be expected. Floccher's Case (1915), 221 Mass. 54 (108 N. E. 1032). It can not be said that a workman's refusal to undergo the operation of trephining was unreasonable, that it is admitted that it would not have effected a total cure. Hawkes v. Coles (1910), 3 B. W. C. C. 163. . . The view has been taken that the only interest which the employer can have in requiring the employee to submit to an operation is that the amount of compensation to be paid would thereby be lessened. Thus a workman can not be claimed to be unreasonable in refusing to undergo an operation, where there is no evidence that the operation could lessen the amount of compensation payable by the employers. Molamphy v. Sheridan, (1914) W. C. 8 Ins. Rep. 20, 47 Ir. L. T. 250." See also annotations 18 A. L. R. 431 et seq., 41 A. L. R. 866 et seq., and 54 A. L. R. 639 et seq.

In 2 Schneider's Workmen's Compensation Law, § 496, the author, in commenting upon various adjudications from various jurisdictions, says: "An employee is not compelled to undergo an operation, in order that he may not forfeit his right to com-

pensation, when the outcome of the operation is problematical, uncertain and attended with danger. . . The English cases are unanimous in holding that an unreasonable refusal upon the part of the injured employee to submit to an operation attended with no grave dangers and which would, in every probability, result in a recovery, is ground for terminating disability payments. An employee who refuses to undergo an operation, which his own doctor advises, and which is not accompanied by any risk, but the beneficial effects of which he will not guarantee, is not acting unreasonably. Where doctors disagree as to the probable success, of the operation, the trend of the decisions is that a refusal to submit to the operation is not unreasonable. . . A dependent can not be denied compensation for refusing to submit to an operation of doubtful results, and attended with risk of life, for the purpose of removing the disability causing dependency. A workman received an injury to his arm and amputation was advised, but the arm was saved, though there was a poor recovery, the patient being left unfit for work, and evidence was produced showing that unless the patient submitted to an operation this condition would continue, it was claimed that the award could not exceed that authorized for the loss of an arm. This contention was denied because total permanent disability may exist without the loss of or injury to any specific member. Even though the patient might be restored to a condition that should permit him to go back to work, still he is not required to undergo a serious operation, such as the amputation of the arm at the shoulder." In support of the text the author cites many English and American cases, including Marshall v. Ransome Concrete Co., 33 Cal. App. 782 (166 Pac. 846) ; Hawkes v. Richard Coles & Sons, 3 B. W. C. C. 163; Ruabon Coal Co. v. Thomas, 3 B. W. C. C. 32; Mahoney v. Gamble-Desmond Co., 90 Conn. 255 (96 Atl. 1025, L. R. A. 1916E, 110) ; Smith v. Battjes Fuel Co., 204 Mich. 9 (169 N. W. 943).

The denial of compensation to an injured employee because of his refusal to submit to surgical treatment tendered by the employer occurs usually where the operation is a minor one and it is reasonably certain that the operation will afford some relief and thereby reduce the compensation. See Southern California Edison Co. v. Industrial Accident Commission, 75 Cal. 709 (243 Pac. 455) ; Joliet Motor Co. v. Industrial Board, 280 Ill. 148 (117 N. E.

423); Enterprise Fence & Foundry Co. *v.* Majors, 68 Ind. App. 575 (121 N. E. 6); Swift *v.* Industrial Commission, 302 Ill. 38 (134 N. E. 9); Kricinovich *v.* American Car & Foundry Co., 192 Mich. 687 (159 N. W. 362).

It appears conclusively, as a matter of law, under the undisputed evidence, that the injured employee was justified in refusing the surgical treatment tendered him by the employer, namely the re-breaking of his leg. The industrial commission therefore erred in denying to the injured employee further compensation, upon the ground that his refusal to accept the surgical treatment tendered him was unreasonable; and the judge of the superior court erred in affirming the judgment of the industrial commission.

*Judgment reversed. Jenkins, P. J., and Bell, J., concur.*