(No. 11332.—Reversed and remanded.)

THE JOLIET MOTOR COMPANY, Plaintiff in Error, *vs.* THE
    INDUSTRIAL BOARD OF ILLINOIS *et al.* Defendants in
    Error.

*Opinion filed October 23, 1917.*

1. WORKMEN'S COMPENSATION—*what is sufficient notice of the
injury and claim for compensation.* If the foreman of a motor
company knows of an accident to an employee when it occurs, the
manager offers to make a settlement for a certain sum and the em-
ployee tells the secretary and treasurer that he is going to look
to the company to reimburse him, there is sufficient notice of the
injury and claim for compensation.

2. SAME—*compensation for loss of an eye does not depend upon
time lost.* The compensation for total loss of the sight of an eye
is fixed by statute and does not depend upon the amount of time
lost by reason of the accident.

3. SAME—*when the Industrial Board should not award compen-
sation for loss of sight.* Where the evidence on the hearing of a
claim for total loss of sight of an eye shows that the same was
caused by a cataract of slow growth and that an operation could
be performed which would cause little or no pain to the employee
and not endanger his life and would probably restore his sight, the
Industrial Board should not award compensation for total loss of
sight of the eye even though it could not compel the employee to
undergo an operation.

WRIT OF ERROR to the Circuit Court of Will county;
the Hon. FRANK L. HOOPER, Judge, presiding.

GARNSEY, WOOD & LENNON, (EDWARD C. HALL, of
counsel,) for plaintiff in error.

ALBERT KRUSEMARK, for defendant in error Frank
Goodwin.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the
court:

The circuit court of Will county confirmed the order of
the Industrial Board sustaining an award of a committee
of arbitration giving to defendant in error Frank Goodwin
nine dollars per week for one hundred weeks from August

18, 1915, for complete loss of sight of his left eye, to be paid by the Joliet Motor Company, plaintiff in error, and certified that the cause was one proper to be reviewed by this court.

The Industrial Board made a finding of facts, upon sufficient evidence, that on May 2, 1914, Frank Goodwin, while in the employ of the Joliet Motor Company as a machinist and receiving as wages three dollars per day, was injured by a particle of steel entering his left eye from the chipping of a cone which he was hammering into an axle of an automobile; that a few days later he was treated by an eye specialist, who found nothing wrong with the eye and prescribed eye-water to allay inflammation; that Goodwin, after laying off for a day or so, returned to his employment and worked up to August 22, 1914, when he quit and went into business for himself; that after the above treatment there was no further treatment of the eye until October 27, 1914, when Goodwin went to another eye specialist, who made an examination and found nothing in the eye but advised an X-ray, and by his advice two X-ray photographs were taken, one in Chicago and the other in St. Joseph's Hospital, in Joliet, both of which were negative and showed nothing in the eye; that Goodwin complained of pain and blurred vision, and the eye specialist reduced the condition so that he could see fingers at a distance of about four feet; that a cataract gradually formed on the eye until March 4, 1916, when loss of sight was complete, except that Goodwin could distinguish light but not objects; that the specialist advised an operation for the removal of the cataract and a day for the same was set, but it was postponed for the reason that the case was set for the hearing before the committee of arbitration and Goodwin feared that it might make it impossible for him to be present; that both eye specialists told him that there would probably be a recovery of eyesight if the operation were had, and one of them testified that seventy-five percentum of such opera-

tions, at least, were successful, and the eye would probably be practically restored to normal vision for working purposes. The Industrial Board then made a finding that it had no power to force an operation unless there were reasons not indicated in the record, and entered an order as above stated. The uncontradicted evidence was that there was no possibility of danger to Goodwin from the operation.

The claims of the plaintiff in error are (1) that no claim for compensation was made upon it until after the expiration of more than six months after the accident; (2) that Goodwin sustained no incapacity on account of the accident except for two days at the time of the injury but continued at his usual work, receiving the same wages, and therefore was not entitled to compensation except for the two days; (3) that the loss of eyesight was due to his unreasonable failure to undergo the operation for the removal of the cataract and restoration of vision advised by the specialists employed by him and not to the original accident.

The foreman, Joseph Carlson, knew of the accident when it occurred, and afterward the manager of the plaintiff in error offered Goodwin $200 in settlement of the injury. Goodwin told the secretary or treasurer that he was going to look to the company to reimburse him, and the manager said that was all right and advised him to take care of the eye. The notice was sufficient. *Parker-Washington Co.* v. *Industrial Board,* 274 Ill. 498; *Suburban Ice Co.* v. *Industrial Board,* id. 630.

Goodwin lost only two days at the time of the accident, after which he resumed his work, but the compensation fixed by the statute for the loss of an eye does not depend on the loss of time but is fixed at fifty percentum of the average weekly wage during one hundred weeks.

The growth of the cataract was a very slow affair, and the time when there was an entire loss of sight was fixed by the arbitration committee and Industrial Board as August 18, 1915, fifteen months after the accident. The evi-

dence was that an operation for the removal of a cataract is neither serious nor dangerous to an ordinary person in good health and a very large majority of such operations are successful. There was a good probability of recovering normal vision for ordinary purposes by removing the cataract, and the Industrial Board found that Goodwin ought to have the operation performed. The fact that the board had no power to force him to submit to an operation did not determine the question involved, which was whether the total loss of sight was attributable to the accident, which caused the slow growth of a cataract, or to an unreasonable refusal of Goodwin to have the cataract, which caused the loss of vision, removed. The statutory provision for reducing or suspending compensation if an employee shall persist in unsanitary or injurious practices which tend to either imperil or retard his recovery or shall refuse to submit to such medical or surgical treatment as shall be reasonably essential to his recovery does not apply to an original application for compensation on account of an entire loss of the sight of an eye, where the question to be decided is whether that loss is due to an unreasonable refusal to remove the cause. The evidence was that the proposed operation would not be attended with any risk and appears to be such as any reasonable man would take advantage of if he had no one against whom he could claim compensation, and the board found that it was the duty of Goodwin to have the operation performed. Under that finding the refusal of Goodwin was unreasonable, and the continued total loss of sight should be attributed to such refusal and not to the accident. *Walsh* v. *Locke,* 6 Neg. & Comp. Cas. Ann. 675.

The order of the board was not consistent with its finding. If the operation for the loss of sight should be had and prove unsuccessful the Joliet Motor Company would be liable for the loss of sight as well as the surgical and hospital services necessary for the operation and the treatment

already received, but if successful its liability would be for the temporary loss of time and treatments had and surgical and hospital expenses necessary for the operation, and if the operation should not be a substantial success there would be a different basis of compensation from a case of total loss of eyesight.

The judgment is reversed and the cause is remanded to the circuit court, with directions to set aside the order of the Industrial Board, and for such further proceedings as are provided by statute.

*Reversed and remanded, with directions.*