FIRST DIVISION

August 19, 2002

No. 1-01-1195

ROBERT LUCHESI, ) Appeal from the

) Circuit Court of

Plaintiff-Appellee, ) Cook County

)

v. ) )

RETIREMENT BOARD OF THE FIREMEN'S )

ANNUITY AND BENEFIT FUND OF CHICAGO, ) Honorable

) Richard A. Siebel,

Defendant-Appellant. ) Judge Presiding

JUSTICE McNULTY delivered the opinion of the court:

The Retirement Board of the Firemen's Annuity and Benefit Fund of Chicago denied Robert Luchesi's application for duty disability benefits because he failed to have physical therapy following a shoulder injury.  On administrative review the trial court reversed the board's decision, finding that no law made firefighter's benefits contingent on receiving medical treatment.  The board, on appeal, claims that Luchesi's failure to perform physical therapy constitutes an intervening cause breaking the causal connection between the shoulder injury and the disability. 

We reject the board's argument because no evidence supports the conclusion that Luchesi would not be disabled if he had performed all prescribed physical therapy.  As the injury remains a cause of Luchesi's disability, the board improperly denied Luchesi's application for benefits.  We affirm the trial court's judgment reversing the board's decision.

On March 30, 1998, the Chicago fire department took a fire truck out of service when it broke down.  Luchesi and another firefighter tried to move a ladder from that fire truck to a functioning fire truck that needed a ladder.  Luchesi needed to step backwards with the ladder.  As he did so he fell backwards over an object another firefighter left on the floor.  An ambulance took Luchesi to a nearby hospital.  The fire station's log has a notation that Luchesi "fell on his tailbone."  The log also reflected that doctors at the hospital found that Luchesi suffered "lumbar & shoulder contusion."

The doctor treating Luchesi referred him to physical therapy.  When the shoulder failed to improve after months of physical therapy, the doctor ordered a magnetic resonance imaging (MRI) test.  The radiologist reported no remarkable results from the MRI.  Luchesi's treating physician reported "mild progress" from the physical therapy, but with significant limitations.  The doctor prescribed injections to reduce the pain.

Despite Luchesi's continuing efforts at physical therapy, his shoulder did not heal.  In October 1998 his doctor referred him to an orthopedic surgeon.  The surgeon examined Luchesi, reviewed the MRI and X rays, and recommended an arthroscopy.  When the surgeon operated in January 1999 he found a partial tear of the rotator cuff, an anterior labrum tear, and a slap lesion.  The surgeon performed debridements of both tears, a decompression, and a resection.

Luchesi began a new course of physical therapy following the surgery, but he attended only three sessions.  Although the surgeon prescribed an extended course of physical therapy, Luchesi refused any further treatment.  The fire department terminated Luchesi's employment on March 12, 1999, because Luchesi missed medical appointments.

On April 1, 1999, Luchesi applied for duty disability benefits pursuant to section 6-151 of the Illinois Pension Code (the Code) (40 ILCS 5/6-161 (West 1998)).  Dr. George Motto, a physician for the board, examined Luchesi.

The board held a hearing to consider the application.  Luchesi testified that in the accident on March 30, 1998, he landed on his back and shoulder and he heard his shoulder pop.  He had no previous problems with his shoulder.

The board presented a summary of the days Luchesi missed work due to health problems.  The records showed that the fire department hired Luchesi in February 1980.  Over the next 18 years Luchesi missed a total of 172 days for a variety of illnesses and injuries, none involving the shoulders.  A board member, James Joyce, used the records for questioning Luchesi.  Joyce found that Luchesi lost a year following the March 1998 injury for a total of more than 520 days off for health reasons in 19 years with the department.  Joyce said:

"It looks like you average one month a year off work.  I find that very unusual.

Then when you get down to your injury it[']s reported as something to your lower back and then it comes out it is your shoulder and you started rehab but you quit rehab.

And there is a lot of inconsistencies.  Very difficult to follow your case."

Two of Luchesi's coworkers corroborated his testimony about the accident, but they admitted that they did not see exactly how Luchesi landed.  They agreed that Luchesi had not previously complained of inability to do any of the work, and they knew of no prior shoulder problems.

Dr. Motto testified that the present condition of Luchesi's shoulder prevented him from performing the duties of a firefighter.  He found that atrophy, due to the lack of physical therapy following the operation, "would contribute" to the disabled condition of the shoulder.  Motto said that Luchesi "obviously had a serious injury to his *** shoulder," and "that injury was operated upon."

On cross-examination Luchesi's attorney specifically asked whether Motto found that Luchesi's disability resulted solely from the lack of physical therapy.  Motto answered:

"No, I am not saying that.  What I am saying is that I can not make a proper determination as to his level of [f]unctional [c]apacity; what it would have been if he had had the rehabilitation."

Motto also admitted that he saw no evidence of any incident other than the accident on March 30, 1998, that would have caused the shoulder injury.  Counsel asked whether the present disability was related to the March 1998 accident.  Motto said:

"[H]e does have the shoulder injury. *** But his condition today is as much a result of the shoulder injury as the therapy for that injury or the absence thereof.

***

*** I can't say what therapy would have done until I see the end result of therapy.

***

*** [T]he surgery was for the shoulder injury.  The therapy would have been follow-up to the surgery."

On redirect Motto said he was not "rendering an opinion" that the March 1998 accident caused the shoulder injury, although he reiterated that he saw no evidence of any other cause for that injury.  He concluded again that the lack of physical therapy contributed to the disability.

The board found:

"The Fire Department logs *** prepared at the time of the alleged injury reveal that the applicant fell on his tailbone.  There is no mention in said Fire Department logs of any injury to the applicant's shoulder.

*** The medical records establish that in June, 1998 the applicant underwent an MRI examination which concluded that 'unremarkable MRI of the left shoulder' [
sic
]. ***

*** The applicant underwent surgery in January, 1999.  The surgery revealed a tear in the left shoulder rotator cuff.

*** After the surgery the applicant failed to undertake the prescribed physical therapy.  As of the date of the hearing, the applicant still had not engaged in any physical therapy for his alleged shoulder injury.

***

*** None of the witnesses called by the applicant to testify on his behalf at the hearing testified that they actually saw what had happened to the applicant when he allegedly was injured.  None could testify as to what part of his body had hit the ground.

* * *

*** George S. Motto, M.D. concluded that the applicant is unable to perform his duties as a firefighter in the Chicago Fire Department at the current time.

*** The applicant is unable to perform his duties as a firefighter due to the lack of use of his shoulder, atrophy and severe de-conditioning.  The atrophy in the applicant's shoulder was the result of his failure to undergo physical therapy following his surgical procedure.  The applicant failed to undergo a standard prescribed total surgical rehabilitation program."

From these findings of fact, the board concluded that Luchesi failed to meet his burden of proving that "his disability was the result of a specific injury resulting from an act or acts of duty."

Luchesi filed an action for administrative review of the denial of duty disability benefits.  The trial court found that the board made erroneous findings of fact, and the record showed that Luchesi injured his shoulder in the accident on March 30, 1998.  The court expressly held that section 6-151 of the Code (40 ILCS 5/6-151 (West 1998)) did not disqualify an applicant from receiving benefits if the applicant failed to attend every medical appointment.  Accordingly, the court reversed the board's decision.

ANALYSIS

We review the board's decision rather than the circuit court's judgment.  
Thigpen v. Retirement Board of Firemen's Annuity & Benefit Fund
, 317 
Ill. App. 3d
 1010 (2000).  The parties disagree about the standard of review we must apply in this case.  Luchesi admits that in most cases on administrative review, this court should not disturb the agency's findings of fact unless the manifest weight of the evidence contradicts those findings.  
Oregon Community Unit School District No. 220 v. Property Tax Appeal Board
, 285 
Ill. App. 3d
 170, 175 (1996).  But the "deferential standard is not controlling where the [agency] is prejudiced or biased against the claimant and incapable of giving him a fair hearing."  
Danko v. Board of Trustees of the City of Harvey Pension Board
, 240 Ill. App. 3d 633, 641 (1992).  Luchesi argues that the record here shows that the board harbored prejudice against Luchesi.

To show bias, the 
plaintiff
 must show that members of the adjudicating body had to some extent adjudged the facts as well as the law of the case in advance of hearing it. 
Waste Management of Illinois, Inc. v. Pollution Control Board
, 175 
Ill. App. 3d
 1023, 1040 (1988).  Luchesi points to the board's erroneous findings of fact and board member Joyce's antagonistic comments during cross-examination of Luchesi as proof of bias.

In 
Danko
 the chairman of the board that denied the claimant's application had supervised the claimant when the claimant was first suspended, and the chairman had also suspended the claimant again, pending termination.  The claimant also testified that prior to the hearing the chairman told the claimant the board would "run [him] dry." 
Danko
, 240 
Ill. App. 3d
 at 637.  In light of this background, several of the chairman's comments during the hearing, including calling the claimant a liar, showed that the chairman had in some measure adjudged the facts prior to the hearing.

Luchesi, on the other hand, presented no evidence that any board members knew of Luchesi at all prior to the hearing, or that they indicated any hostility to Luchesi before the hearing began.  Here, as in 
Citizens for a Better Environment v. Pollution Control Board
, 152 
Ill. App. 3d
 105, 112-13 (1987), the statements during and after the hearing do not constitute clear and convincing evidence that board members entered the hearing with closed minds.  See also 
Flaherty v. Retirement Board of the Policemen's Annuity & Benefit Fund
, 311 
Ill. App. 3d
 62, 68 (1999).  Because the record does not convincingly demonstrate the board's bias, we review the record deferentially, and we will disturb the board's findings of fact only if they contravene the manifest weight of the evidence.  If the record sufficiently supports the findings of fact, we then apply the law to those facts.  
Oregon
, 285 
Ill. App. 3d
 at 176.  While we give substantial weight to the agency's interpretation of law, we must independently analyze the law in applying it to the facts.  
Oregon
, 285 
Ill. App. 3d
 at 175-76.

We agree with the trial court that the record contradicts several of the board's findings.  Although the board found that the fire department's log did not mention injury to Luchesi's shoulder, a review of the log shows that it recorded the diagnosis of Luchesi's injury as a "lumbar & shoulder contusion."  On appeal the board makes no effort to defend the erroneous finding.  The record also showed that Luchesi attended three physical therapy sessions following surgery, although the board found he "had not engaged in any physical therapy" following surgery.

Due to the manifestly erroneous findings, we follow the review procedure we outlined in 
Johnson v. Human Rights Comm'n
, 318 
Ill. App. 3d
 582, 587 (2000).  First, we look to the factual findings that are not contrary to the manifest weight of the evidence.  If those findings provide a sufficient basis for the agency's decision, we will affirm the decision.  If those findings, considered alone, cannot justify the decision, we cannot affirm that decision on the basis of the agency's findings.  We then review the record to decide whether to remand the case for further proceedings.  We cannot evaluate the credibility of the witnesses or resolve conflicts in the evidence.  If we find that differing resolutions of such conflicts or credibility issues could support differing resolutions of the case, we must remand the case to the agency for further findings of fact.  But when the record permits only one determination, regardless of any credibility issues or conflicting evidence, we may order that resolution of the case.

The record here supports the board's finding that no witness other than Luchesi himself could say what part of his body hit the floor in the accident of March 30, 1998.  A radiologist found Luchesi's MRI unremarkable.  In January 1999, Luchesi underwent shoulder surgery and the surgery revealed a tear of the rotator cuff.  After the surgery Luchesi failed to follow the prescribed course of physical therapy.  Motto examined Luchesi and found that he could not perform the duties of a firefighter.

According to Motto, Luchesi's failure to follow the prescribed course of physical therapy contributed to the shoulder's condition.  This testimony supports the board's factual finding that Luchesi's disability resulted from the lack of use of his shoulder.

But a disability may result from multiple causes.  A claimant need not prove that a duty-related accident is the sole cause, or even the primary cause, of his disability.  
Barber v. Board of Trustees
, 256 
Ill. App. 3d
 814, 818 (1993); 
Hart Carter Co. v. Industrial Comm'n
, 89 Ill. 2d 487, 494 (1982).  The claimant must prove only that the duty-related accident is a causative factor contributing to the claimant's disability.  
Hart Carter
, 89 Ill. 2d at 494.

The board's factual findings do not expressly include any finding that his shoulder injury was not a causative factor contributing to his disability.  Any such finding would be contrary to the manifest weight of the evidence, since Motto gave his uncontested opinion that the shoulder injury remained a cause of the disability.  The board did not find that the shoulder injury might have resulted from a cause other than the accident of March 30, 1998.  Neither did the board find that the accident of March 30, 1998, occurred outside of the course of Luchesi's duties.  Because the board's sustainable findings do not rule out the possibility of a duty-related cause for Luchesi's disability, the sustainable factual findings do not provide a sufficient basis for the board's conclusion that Luchesi failed to produce sufficient evidence of entitlement to a duty disability benefit.

Next, we review the uncontroverted evidence in the record to determine whether any factual issues require further hearing before the board.  The evidence shows that before March 30, 1998, Luchesi had no problems with his shoulder.  On that date he had an accident in the course of performing duties for the fire department.  Doctors found shoulder contusions.  When physical therapy and pain-killing injections failed to improve the shoulder's condition, a surgeon decided to operate.  The unremarkable MRI did not convince the surgeon that Luchesi suffered no injury or that he exaggerated his symptoms.  The surgeon found the rotator cuff torn, and he found other damage to the shoulder.  Motto agreed that Luchesi's shoulder had been severely injured, and he could see no evidence of any event other than the accident on March 30, 1998, as a cause of the injury.  The record forces the conclusion that a duty-related accident led to the need for shoulder surgery.

The board contends that Luchesi's subsequent failure to undergo physical therapy constitutes a superseding cause of his continuing disability.  For this argument the board relies on 
Mulack v. Hickory Hills Police Pension Board
, 252 
Ill. App. 3d
 1063 (1993), which applied two cases interpreting the Workers' Compensation Act (the Act) (820 ILCS 305/1 
et seq
. (West 1998)) to the interpretation of the Code.  The argument requires an understanding of the similarities and differences between the Code and the Act.

The Act and the Code serve similar purposes, and courts properly use the Act to aid interpretation of the Code.  
Mitsuuchi v. City of Chicago
, 125 Ill. 2d 489, 493-94 (1988).  Our legislature designed the Act and the Code to provide employees prompt and equitable compensation for their injuries, while protecting employers from the uncertain exposure of suits at common law from injured employees. 
Mitsuuchi
, 125 Ill. 2d at 494.  Courts construe both the Act and the Code liberally in favor of the applicant to achieve their beneficial purposes. 
Wilfert v. Retirement Board of the Firemen's Annuity & Benefit Fund
, 263 
Ill. App. 3d
 539, 543 (1994).

The Act requires payment of compensation to employees for accidental injuries "arising out of and in the course of the employment." 820 ILCS 305/2 (West 1998).  The Code requires payment of duty disability benefits to any firefighter who becomes disabled "as the result of a specific injury, or of cumulative injuries, *** incurred in or resulting from an act or acts of duty." 40 ILCS 5/6-151 (West 1998).  The Code section applicable to disabled police officers similarly requires payment of benefits if the disability is "the result of injury incurred *** in the performance of an act of duty." 40 ILCS 5/5-154 (West 1998).  Courts have interpreted the causal test under the Code as similar to the test under the Act. 
O'Callaghan v. Retirement Board of Firemen's Annuity & Benefit Fund
, 302 
Ill. App. 3d
 579, 583 (1998).

The Act requires the claimant to accept appropriate medical care or face a reduction of benefits:

"If any employee *** shall refuse to submit to such medical, surgical, or hospital treatment as is reasonably essential to promote his recovery, the Commission may, in its discretion, reduce or suspend the compensation of any such injured employee." 820 ILCS 305/19(d) (West 1998).

While this section of the Act authorizes the reduction or suspension of benefits based on the refusal of medical care, the Act does not authorize denial of benefits for any injury arising out of employment.  The Code includes no parallel to section 19(d) of the Act.  Neither the Act nor the Code permits denial of benefits for failure to get medical care – as long as the injury or disability results from acts in the course of employment.

In 
Joliet Motor Co. v. Industrial Board
, 280 Ill. 148 (1917), an employee injured his eye in the course of his work and sought compensation under the Act.  Doctors recommended operating on the eye, estimating a 75% chance of full recovery of use of the eye. 
Joliet
, 280 Ill. at 149-50.  The claimant refused the operation.  Although the uncontradicted evidence showed no possibility of danger from the operation, the Industrial Commission awarded the claimant compensation, finding it could not force the claimant to have the operation.  On the employer's appeal our supreme court held:

"The fact that the board had no power to force [the claimant] to submit to an operation did not determine the question involved, which was whether the total loss of sight was attributable to the accident, which caused the slow growth of a cataract, or to an unreasonable refusal of [the claimant] to have the cataract, which caused the loss of vision, removed.  The statutory provision for reducing or suspending compensation if an employee *** shall refuse to submit to such medical or surgical treatment as shall be reasonably essential to his recovery does not apply to an original application for compensation on account of an entire loss of the sight of an eye, where the question to be decided is whether that loss is due to an unreasonable refusal to remove the cause.  The evidence was that the proposed operation would not be attended with any risk and appears to be such as any reasonable man would take advantage of if he had no one against whom he could claim compensation, and the board found that it was the duty of [the claimant] to have the operation performed.  Under that finding the refusal of [the claimant] was unreasonable, and the continued total loss of sight should be attributed to such refusal and not to the accident." 
Joliet
, 280 Ill. at 151.

Thus, the court held that the refusal of medical care in that case constituted the sole operative cause of the claimant's condition.  If the refusal had not been the sole cause of the continuing disability, the continuing disability would have arisen out of the accident as well as the refusal, and then, under the terms of the Act, the claimant would have a right to compensation, reduced or suspended due to the unreasonable refusal of medical care.  The court expressly held that the section of the Act permitting a reduction or suspension of benefits did not apply to the circumstances of that case.  Instead, the court held that the claimant's condition did not arise out of the accidental injury.

The court followed 
Joliet
 in 
Mt. Olive Coal Co. v. Industrial Comm'n
, 295 Ill. 429 (1920).  In that case an employee broke his arm at work.  Due to the manner in which the tendons healed, he needed a subsequent procedure to restore his hand to full utility.  He refused to undergo the surgery, although the doctor testified that the simple and safe procedure would correct the problem.  Our supreme court held that the accident entitled the employee to an award of temporary total disability benefits under the Act.  However, the court found that "the permanent disability of defendant in error is due to his refusal to submit to this simple operation and not due to the accident." 
Mt. Olive
, 295 Ill. at 433.

The board argues that 
Joliet
 and 
Mt. Olive
 establish that any unreasonable refusal of medical care becomes the cause of any disability, regardless of whether the testimony shows that the medical treatment would likely have completely overcome the disability.  Under that interpretation,  
Joliet
 and 
Mt. Olive
 would render section 19(d) of the Act a nullity.  The unreasonable refusal of medical treatment could never present grounds for a partial reduction in compensation if it always demanded a complete denial of compensation.  Our supreme court did not purport to nullify section 19(d) of the Act.  The court expressly held that the section did not apply to the facts of the case.  We cannot accept the board's interpretation of  
Joliet
 and 
Mt. Olive
.

In 
Mulack
 the court applied 
Joliet
 and 
Mt. Olive
 to a case arising under the Code.  The police officer in 
Mulack
 injured his knee while chasing a suspect.  One doctor recommended operating on the knee while another recommended physical therapy without surgery.  The board awarded the officer temporary disability but required him to undergo surgery before it would award him permanent disability.  The officer refused surgery, deciding to stay in physical therapy, and the board terminated disability payments, finding that the refusal of surgery caused the disability to continue.

The appellate court reversed.  First, the court noted that the court in 
Mt. Olive
 and 
Joliet
 held that an unreasonable refusal of medical treatment may constitute the sole cause of a claimant's continuing disability. 
Mulack
, 252 
Ill. App. 3d
 at 1069.  Although the court recognized that the Code lacked any provision parallel to section 19(d) of the Act, the court found 
Joliet
 and 
Mt. Olive
 applicable to determination of whether a duty injury resulted in a claimant's disability under the Code.  But the court held that the record in 
Mulack
 did not support the board's finding that the officer refused surgery unreasonably.  In light of the conflicting medical opinions, the court ordered the payment of disability benefits. 
Mulack
, 252 
Ill. App. 3d
 at 1071.

We agree with the court in 
Mulack
 that 
Joliet
 and 
Mt. Olive
 guide our interpretation of whether a claimant's disability resulted from an act of duty, within the meaning of the Code.  In both 
Joliet
 and 
Mt. Olive
 the court held that the claimants' unreasonable refusal of treatment constituted an intervening sole cause of the claimant's disability.  Here, Luchesi unreasonably refused to continue in physical therapy following surgery.

But in 
Joliet
 and 
Mt. Olive
 the evidence supported the conclusion that if the claimant had undergone the recommended procedure, he would have regained use of the injured part to the extent that he could fully engage in his former occupation.  That is, in both cases doctors testified that but for the claimant's refusal of medical treatment, he would have, more likely than not, overcome the disability.  Thus, in both cases the evidence showed not only that the refusal of medical treatment caused the continuing disability, but also that the original injury did not cause the disability to continue.  

Here, Motto testified that he could not determine what the likely result would have been if Luchesi had kept going to physical therapy.  He could not say that physical therapy would, more likely than not, return Luchesi to a condition in which he would be capable in which he would be capable of performing the duties of a firefighter.  Motto clarified that both the shoulder injury that led to the surgery and the lack of physical therapy contributed to Luchesi's disability.

If Luchesi sought compensation under the Act, rather than benefits under the Code, his failure to follow through with physical therapy would qualify under section 19(d) for the reduction or suspension of compensation. See 
City of Jennings v. Clay
, 719 So. 2d 1164, 1168 (La. App. 1998) (under state workers' compensation statute authorizing reduction of benefits for refusal of medical treatment, 50% reduction upheld where claimant refused postoperative physical therapy); 
Luttrell v. Cardinal Aluminum Co.
, 909 S.W.2d 334, 337 (Ky. App. 1995) (under state workers' compensation statute authorizing elimination of benefits if unreasonable refusal of medical treatment prolongs disability, court affirmed reduction in award commensurate with extent to which refusal contributed to continuing disability).  But that failure does not warrant the denial of compensation altogether, because the evidence does not show that the refusal of treatment counts as the sole cause of his condition.  
Joliet
 and 
Mt. Olive
 eliminated benefits, rather than reducing them under the Act, only because the evidence in those cases showed that the disabilities would not have continued if the claimants had all of the recommended treatments.

While the Code largely parallels the Act, it differs markedly by the absence of any provision similar to section 19(d) of the Act.  The Act authorizes the reduction or suspension of compensation when the claimant unreasonably refuses medical treatment, but the Code does not authorize such a reduction or suspension of benefits.  From the use of different provisions we must presume that the legislature intended different results to follow. 
In re K.C.
, 186 Ill. 2d 542, 549-50 (1999); 
Siciliano v. Village of Westchester Firefighters' Pension Fund
, 202 
Ill. App. 3d
 964, 967 (1990).  The legislature apparently sought to provide somewhat greater protection for police officers and firefighters than the Act provided for other kinds of employees.  While most injured employees may have compensation reduced or suspended for failing to have all necessary medical treatment, the Code authorized no reduction, leaving injured firefighters and officers with full disability benefits, even if they refused medical treatment.

Mulack
 identifies a qualification of the general rule: if the refusal of treatment rises to the level of a superseding cause of continuing disability, then the Code permits the denial of benefits.  But where, as here, the record lacks evidence that the claimant would have recovered the ability to work as a firefighter or police officer if he had all recommended treatment, the refusal constitutes only one of several causes of the continuing disability.  It does not qualify as a superseding sole cause of the continuing disability.  In such a case 
Joliet
 and 
Mt. Olive
 would not warrant a complete denial of compensation under the Act; instead, section 19(d) would allow suspension or reduction of compensation.  In the absence of a provision parallel to section 19(d), the Code permits no such reduction or suspension of benefits.  In accord with the legislative intent to provide greater protection for police officers and firefighters, we hold that absent proof that Luchesi would have fully recovered if he had all recommended treatment, his refusal of treatment does not justify any reduction in benefits under the Code.  Luchesi here presented evidence that the duty-related accident on March 30, 1998, is one cause of his disability, and the board heard no evidence that his subsequent refusal of physical therapy was the sole cause of his continuing disability.

The board argues that the court must nonetheless affirm its decision based upon section 6-153 of the Code, which provides:

"Proof of duty, occupational disease, or ordinary disability shall be furnished to the Board by at least one licensed and practicing physician appointed by the Board. ***  The Board may require other evidence of disability." 40 ILCS 5/6-153 (West 1998).

The board interprets this statute to mean that if the claimant seeks a duty disability, the doctor the board appoints must testify not only that the claimant is disabled, but also that the disability qualifies as a duty disability.  Thus, the board's doctor must say that the disability resulted from an act or acts of duty within the meaning of section 6-151 of the Code.

Here, Motto found Luchesi disabled by the condition of his shoulder, and he saw no evidence of any event other than the accident on March 30, 1998, that caused the initial shoulder injury.  But he specifically answered that he was not rendering an opinion that the incident on March 30 caused the shoulder injury.  According to the board, this answer completely defeats claimant's application for duty disability benefits.

We disagree.  In interpreting section 6-153 we emphasize again our duty to construe the statute liberally in favor of awarding benefits, in accord with the purpose of the Code.  
Wilfert
, 263 
Ill. App. 3d
 at 543.

Section 6-153 follows three separate sections establishing rules regarding duty disability benefits (40 ILCS 5/6-151 (West 1998)), occupational disease disability benefits (40 ILCS 5/6-151.1 (West 1998)), and ordinary disability benefits (40 ILCS 5/6-152 (West 1998)).  The reference to "duty, occupational disease, or ordinary disability" in section 6-153 (40 ILCS 5/6-153 (West 1998)) clarifies that the requirements for proof of disability in that section apply to all three kinds of disability described in the three preceding sections.  Section 6-153 establishes that a claimant cannot recover benefits under any of the three preceding sections unless the board's doctor agrees that the claimant suffers a disability.  See 
Nowak v. Retirement Board of the Firemen's Annuity & Benefit Fund
, 315 
Ill. App. 3d
 403, 411-12 (2000).

The legislature showed the intent to restrict the reach of section 6-153 to proof of disability by specifically authorizing the board, in that section, to "require other evidence of disability." 40 ILCS 5/6-153 (West 1998).  Moreover, if the legislature required medical testimony to establish that the cause of the disability arose from duty, one would expect the legislature to also require medical testimony that the cause of death arose from duty in those cases in which death benefits depend on whether the firefighter died in the performance of an act of duty.  We find no requirement of medical testimony to establish the right of a firefighter's widow to an annuity under the Code, although the amount of the annuity depends on whether an act of duty caused the death. See 40 ILCS 5/6-140, 6-141, 6-141.1 (West 1998).  Just as the legislature did not require such testimony for widows, it also did not intend section 6-153 to require medical testimony that the performance of a duty caused the disability.  Because Motto testified that he found Luchesi disabled, Luchesi met the proof requirement of section 6-153.

We recognize that other judges have read section 6-153 to require a claimant seeking duty disability benefits to have the board's physician furnish proof that an act of duty resulted in the disability. See 
Thigpen
, 317 
Ill. App. 3d
 at 1023 (McBride, J, dissenting).  To obviate the need for remand if our supreme court should reject our interpretation of section 6-153, we find that on such a remand we would hold that Motto furnished sufficient proof of duty disability.  He unequivocally found Luchesi disabled, and he testified that Luchesi's disabled condition was "as much a result of the shoulder injury as the therapy for that injury or the absence thereof."  By so stating, he furnished proof that the shoulder injury was one of the factors resulting in the disability.  He further testified that he saw no evidence of any event other than the March 1998 accident that could have caused the shoulder injury.  This testimony furnishes proof supporting the conclusion that the March 1998 incident resulted in the disability. See 
Thigpen
, 317 
Ill. App. 3d
 at 1019-20.  The evidence before the board showed that the injury on March 30, 1998, occurred while Luchesi performed his duties as a firefighter.  Thus, Motto's testimony supplied the necessary causal connection between the duty-related accident and the continuing disability.  Even if section 6-153 requires the board's doctor to furnish proof that a duty-related incident resulted in the claimant's disability, Luchesi here met that requirement.  Section 6-153 provides no grounds for affirming the board's decision.

The record before the board flatly contradicted several of the board's findings, so the findings are contrary to the manifest weight of the evidence.  The uncontroverted evidence before the board showed that Luchesi injured his shoulder while performing an act of duty as a firefighter and that shoulder injury is one of the factors that resulted in his continuing disability.  Section 6-151 of the Code entitles Luchesi to receive duty disability benefits.  Section 6-153 requires the board's doctor to furnish proof that the claimant is disabled; Motto here furnished the requisite proof.  If the board wishes to reduce or suspend the benefits payable to a claimant like Luchesi, who unreasonably refuses medical treatment that might improve his condition, the board needs to persuade the legislature to amend the Code to include a provision similar to section 19(d) of the Act.  Under the Code the legislature enacted, the evidence before the board demands the conclusion that Luchesi has the right to receive duty disability benefits.  The trial court correctly reversed the board's decision.

Affirmed.

COHEN, P.J. and COUSINS, J., concur.