2022 IL App (1st) 211184-U

No. 1-21-1184

Order filed September 6, 2022

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| JEFFREY SNARSKI, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 2017 CH 8025 |
| | ) | |
| | ) | |
| THE BOARD OF TRUSTEES OF THE SCHILLER | ) | |
| PARK POLICE PENSION BOARD, | ) | Honorable |
| | ) | Sophia Hall, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE HYMAN delivered the judgment of the court.
Justices Pucinski and Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*: Plaintiff was entitled to a line-of-duty disability pension where the manifest weight of the evidence established that his disabling injury occurred in the line of duty; circuit court judgment reversing the Board's decision is affirmed.

¶ 2    The Board of Trustees of the Schiller Park Police Pension Board appeals from the circuit

court's order reversing the Board's determination that Jeffrey Snarski was entitled to a non-duty

disability pension under the Illinois Pension Code, and awarding him a line-of-duty disability

pension. On appeal, the Board contends that Snarski failed to establish that his disabling injury occurred in the line of duty.

¶ 3     We affirm the circuit court judgment reversing the Board's decision denying Snarski a line-of duty pension. After a careful and thorough review of the record, we find the Board's determination against the manifest weight of the evidence.

¶ 4                                  Background

¶ 5     The facts come from Snarski's testimony at the hearing before the Board and the administrative record, including medical records and physicians' notes.

¶ 6     Snarski testified that he served as a police officer with the Schiller Park Police Department for over 18 years. On October 13, 2011, he and two other officers responded to a domestic disturbance call. At the residence, Snarski heard a woman screaming from behind a locked door that "he's trying to kill me." Snarski tried several times to kick open the door. Eventually, the door opened, and Snarski saw a woman in distress and "a larger man" who fled to the back of the house.

¶ 7     Snarski and another officer chased the man into a bedroom, where the man started swinging at them. They subdued and handcuffed him. At that point, the man became "dead weight." The officers pulled him off the bed and through the house. Snarski estimated that the man weighed 250 to 300 pounds. At the front door, the man tried to kick the officers, lost his balance, and started to fall down the stairs. Snarski used his right arm to grab the man. With an officer's help, the man was placed in a squad car.

¶ 8     Snarski knew "something was wrong." After making his report of the incident, Snarski told his sergeant how he felt. His sergeant told him to take his preplanned vacation and "ice things." A few hours later, Snarski felt severe pain in his right hip, right knee, and right shoulder.

¶ 9 Snarski filed a formal injury report. The village "immediately" sent him to a local clinic where he saw Dr. Sondra Bender. She prescribed a course of prednisone, corticosteroids, and ibuprofen for the pain, which proved ineffective. A subsequent MRI revealed a small tear to the labrum in Snarski's shoulder and a torn labrum in his right hip.

¶ 10 In November 2011, Snarski sought treatment from his primary care physician, Dr. Paul Baubly, for work-related injuries to his shoulder, hip, and knee. Dr. Baubly noted that Snarski's medical history before the incident included a "Herniated disc L5." In March 2012, Dr. Baubly noted that Snarski complained of low back pain. (The record contains documentation from many physicians regarding a multitude of ailments and pain management. We focus on facts relating to Snarski's back and hip injuries, the issues relevant to the Board's determination.)

¶ 11 Dr. Benjamin Domb operated on Snarski's hip in April 2012. Dr. Domb's notes from September 2012, indicated that Snarski was "doing much better with his hip" with mild pain. Snarski experienced occasional low back pain, but Dr. Domb cleared him to return to work as a detective. Snarski was promoted to detective.

¶ 12 On May 28, 2013, Dr. Domb noted that Snarski's hip was popping, which was "painful" and affected the sacroiliac joint. Dr. Domb prescribed physical therapy, core strengthening, and lumbar exercises, and cleared Snarski to work without restrictions. At another visit on July 1, 2013, Snarski's right hip joint was "doing fairly well," yet he experienced "iliopsoas popping" that caused sacroiliac joint pain. Snarski was to continue exercises and receive an "SI joint injection" from Dr. Steven Bardfield. Again, Snarski was cleared to work without restrictions.

¶ 13 In September 2013, Snarski saw Dr. Bardfield regarding his "low back pain." Dr. Bardfield's notes stated that the pain had been present for 23 months and the injury occurred at

work. Snarski would continue to receive sacroiliac joint injections and transition to a "self-directed exercise program." He could return to regular detective duties without restrictions.

¶ 14    Snarski saw Dr. Mark Lorenz for a second opinion in February 2014. Dr. Lorenz noted that Snarski suffered from low back pain and reported that "he hurt his back from kicking in a door while on his job back in 10/2011." Although Snarski's hip "was doing alright," he experienced "lower back pain with occasional radiation to the right lower extremity." An MRI showed "mild degenerative changes" and "some edema in the pedicle of L5 or the first mobil level." Dr. Lorenz ordered a CT scan to evaluate the edema. Because Snarski worked "mainly in the office," Dr. Lorenz did not impose work restrictions.

¶ 15    The following month, Dr. Lorenz indicated that Snarski continued to experience low back pain. The CT scan revealed "severe degenerative changes at the L5-S1 level or the first level of his lumbar spine." Dr. Lorenz noted that Snarski appeared to have "an aggravation of some degenerative condition secondary to a work incident." Dr. Lorenz ordered another joint injection and placed Snarski "on light duty."

¶ 16    Snarski saw Dr. Lorenz again in May. His back pain had not improved with treatment. Dr. Lorenz ordered another MRI, referred Snarski to Dr. Maria Francis for a rheumatology evaluation, and maintained the work restrictions. Snarski saw Dr. Francis for pain to his "back and entire body." Her notes indicated Snarski was "evaluated for an auto-immune disease secondary to a positive ANA." Dr. Francis later wrote that Snarski had a "false Positive ANA" and did not have an autoimmune disease.

¶ 17    On June 17, 2015, Snarski applied for disability benefits from the police pension fund. He stated that he could not perform his police as a result of "uncurable severe osteoarthritis due to

trauma, R hip arthroscopy, torn R shoulder, compressed knee, resulting cataracts from corticosteroid use to control inflammation, [and] pinched nerve in neck." He sought line-of-duty disability benefits under section 3-114.1 of the Code (40 ILCS 5/3-114.1 (West 2014)). As required by section 3-115 (40 ILCS 5/3-115 (West 2014)), Snarski underwent independent medical examinations (IME) with three physicians selected by the Board: Drs. Theodore Suchy, Mark Levin, and John Stamelos. These examinations occurred in August and September 2015.

¶ 18                              Dr. Suchy's Report

¶ 19    Dr. Suchy noted that Snarski "developed right groin pain and right shoulder pain" shortly after the October 2011 incident. While the right hip pain improved with surgery, Snarski still reported pain in his right hip and right shoulder. Dr. Suchy reviewed the medical records, noting that a January 2015 MRI showed "multilevel degenerative disc disease with bulging discs." He stated that "[t]he low back problem is not related to this work but to a prior incident." Since the injury, Snarski was diagnosed with anxiety and depression and "has been taken off detective work apparently because of this as well as the low back issues."

¶ 20    After a physical examination, Dr. Suchy concluded Snarski had "physical limitations as it relates to his right hip." Although Snarski underwent arthroscopic surgery, he had "persistent symptomatology with limitations in his activities secondary to right hip pathology," which affected his "ability to run, crawl or walk for any length of time." In Dr. Suchy's opinion, Snarski was "disabled from his ability to perform his activity as a police officer physically because of his right hip pathology," and the October 2011incident "caused the pathology noted above."

¶ 21                              Dr. Levin's Report

¶ 22    Dr. Levin examined Snarski "regarding his right shoulder and right hip work-related injuries." He noted that Dr. Domb performed an arthroscopy of Snarski's right hip in April 2012, and Snarski released to full duty. While Snarski recovered from his hip injury, he was promoted to detective, "which was easier" physically. He continued to have pain in his right shoulder and hip, but x-rays appeared normal.

¶ 23     Dr. Levin noted that about two years after Dr. Domb released Snarski for full duty as a detective, Snarski started feeling pain "in other parts of his body including the neck and low back area." According to Dr. Levin, Snarski was "seeing a rheumatologist and has been diagnosed with Lupus and has a positive ANA." At the time of Dr. Levin's examination, Snarski was working dispatch and paperwork "because Dr. Mark Lorenz, from the back standpoint, took him off of the detective work." Snarski began receiving sacroiliac joint injections for back pain in 2013. This treatment addressed "a new injury with back and entire body pain" due to Snarski's diagnosis for autoimmune disorder secondary to a positive ANA.

¶ 24    Based on an examination and Snarski's medical records, Dr. Levin opined that the "current state of [Snarski's] right shoulder and right hip do not prevent him from returning back to work full duty as a police detective." But, Snarski had other complaints, "which by history and records appear to be related to the possibility of an elevated ANA and Lupus, which are not related to an injury of October 14, 2011."

¶ 25                                  Dr. Stamelos's Report

¶ 26    Dr. Stamelos examined Snarski regarding work-related injuries to his right hip, right shoulder, lower back, and right knee. Snarski reported "mild groin pain in the right hip," which was "much better following surgery and treatment" by Dr. Domb. Snarski also complained of right

knee, neck, and lower back pain. During the examination, Snarski "sat comfortably" but displayed "some apprehension and anxiety with poor short-term memory."

¶ 27    Dr. Stamelos ordered x-rays of Snarski's cervical spine, lumbar spine, and right hip. The x-rays of the lumbar spine showed "degenerative changes and facet arthropathy" at L5/S1 and a "narrowing of the disc space" at that location. The right hip, however, was "well-positioned" and without "arthritic changes" or cysts.

¶ 28    In Dr. Stamelos's opinion, Snarski sustained injuries to his right hip, right knee, and right shoulder, "as well as aggravation of underlying facet arthropathy and degenerative disc of the lumbar spine following the altercation of October 2011." Also, "the subsequent treatment for his lower back *** was attributable to the injury as described in October of 2011." Due to "persistent back pain referred to the thigh and hip" after hip surgery, Snarski had "significant limitations regarding standing, running, jumping or any heavy lifting activities." Dr. Stamelos concluded that Snarski could not "perform all of the duties and functions of a police officer," and these medical problems were due to Snarski's "police service *** in October of 2011."

¶ 29    In an addendum, Dr. Stamelos responded to the Board's request to review the medical evaluation conducted by Dr. Levin who had opined that Snarski's back issues were not related to his right shoulder and right hip from the 2011 incident. Dr. Levin also found no physical limitations regarding Snarski's right hip and right shoulder and concluded that Snarski was capable of full unrestricted work activities.

¶ 30    Dr. Stamelos stated that Snarski "clearly had some continued limitations regarding his right hip with weakness in hip abductors and hip flexors." And that Snarski had "a significant hip injury that required surgical intervention." After surgery, Snarski continued to complain of sacroiliac

joint pain and pain in his lower back. For these reasons, Dr. Stamelos disagreed with Dr. Levin that Snarski "had fully recovered from his right hip surgery." Further, Dr. Stamelos agreed with Dr. Lorenz that the "continued back pain and sacroiliac discomfort was an aggravation of a preexisting condition and was attributable to the injury" Snarski sustained in October 2011.

¶ 31                                     Dr. Salehi's Report

¶ 32    The administrative record contains an IME conducted by Dr. Sean Salehi on June 16, 2014, for a workers' compensation claim. Dr. Salehi noted Snarski's "pain in the right lower back, right hip, knee and shoulder" resulting from the incident in October 2011. Following hip surgery, Snarski returned to work as a detective. He still had pain "in the right lower back" that extended to his groin and leg and he "was not walking right." Snarski denied a "prior history of back pain." Reviewing x-rays of Snarski's lumbar spine, Dr. Salehi noted a disc bulge of L5-S1 and "[s]ignificant facet arthropathy at L5-S1." He opined:

> "The mechanism of injury described is consistent with having resulted in aggravation of preexisting lumbosacral spondylosis. His lower back pain might not have been raised as an issue earlier on after the accident because of the distracting pain in the right hip region. His current complaints of pain with extension fits clearly with the findings of facet arthropathy at L5-S1."

¶ 33    In forming his opinion, Dr. Salehi reviewed Snarski's medical records and referred to Dr. Lorenz's notation that Snarski "had an aggravation of a degenerative condition secondary to a work injury." Dr. Salehi stated that Snarski complained to Dr. Bardfield of low back pain. Also, Dr. Domb's records indicated Snarski began having "pain/clicking in the SI joint" that started "4-6 months post hip surgery."

¶ 34    After the Board could not determine whether Snarski sustained a duty-related disability, it sought another physician's opinion, Dr. Daniel Samo.

¶ 35                            Dr. Samo's Report

¶ 36    Dr. Daniel Samo examined Snarski on March 29, 2016. He also reviewed the notes of Snarski's treating physicians, the reports of Drs. Suchy, Levin, and Stamelos, and Dr. Stamelos's November 3, 2015, addendum.

¶ 37    Dr. Samo raised some inconsistencies. Snarski stated that "he had never had a low back problem." But, on November 23, 2011, Dr. Baubly wrote that Snarski had a "herniated disc L5." In Dr. Samo's opinion, that issue "would have preceded the [work-related] event." Snarski first mentioned back pain to Dr. Baubly on March 8, 2012. Dr. Samo noted that Snarski did not mention back pain again until May 2013. From that point forward, Snarski had "ongoing SI and low back complaints."

¶ 38    Dr. Samo noted that, according to Snarski, Dr. Lorenz had said that the trauma of the October 2011 incident "sparked something," which "led to very severe osteoarthritis of his spine, especially L5 and S1 levels," and "his career was over because of this." According to Dr. Samo "[t]hese statements are not in Dr. Lorenz's notes." Dr. Samo acknowledged that "Dr. Stamelos opined that the back pain was related to the incident." Dr. Samo, however, dismissed this opinion. Instead, he believed that Dr. Stamelos likely was reciting the history given by Snarski and "did not seem to consider that the medical records did not support" it. Dr. Samo explained that he did not have Dr. Bender's records, which "would be important to define [Snarski's] complaints following the event." The records Dr. Samo had seemed "to indicate that the only new symptoms [Snarski] had were right hip and right knee pain."

¶ 39    While Dr. Samo believed that Snarski's "hip injury and subsequent surgery are related to" the work incident, "[t]he back pain which began more than one and a half years following the event would not be related to the event." Instead, "[i]t seems that he had a low back problems [*sic*] prior to the event." Moreover, the delayed onset of Snarski's back pain rendered any link between the October 2011 incident and his pain "irrational." Finally, Dr. Samo believed that "[i]f kicking the door, or apprehending the suspect had aggravated his preexisting back problem or created a new one, it would have been symptomatic" within 24 hours.

¶ 40    Thereafter, Board determined that Snarski was disabled, and his disability was unrelated to the work incident. The Board awarded him non-duty disability benefits.

¶ 41    Snarski sought administrative review of the Board's decision. The circuit court remanded the matter "for further review and clarification as to the issue of causation." The circuit court specified, however, that the Board's determination that Snarski was disabled "shall not be reconsidered or redetermined." The court retained jurisdiction.

¶ 42    The Board issued a new decision that denied Snarski's request for line-of-duty disability benefits but granted him non-duty benefits. The Board gave the greatest weight to Dr. Samo's opinion because he "had the advantage of reviewing all three previous IME reports" and "all the relevant medical records." Dr. Samo noted that Snarski's back pain prevented him from performing his duties as a police officer. Snarski first mentioned back pain on March 8, 2012, after the incident. Dr. Samo believed that if Snarski's actions in October 2011, caused his back injury, he would have experienced symptoms within 24 hours. Dr. Samo also found it significant that Snarski did not complain of back pain again until May 2013, after which he experienced "ongoing

SI and low back complaints." In Dr. Samo's opinion, this delayed onset of symptoms indicated that the work-related incident did not cause Snarski's back problems.

¶ 43    The Board concluded that Snarski was "disabled from back pain that renders him unable to perform his duties as a police officer" and his back pain was not related to the October 2011 incident because Snarski had a preexisting history of "herniated disc L5," and his symptoms appeared well after that date. Also, Snarski returned to full duty after the incident. The Board found "that because [Snarski] returned to work and performed his duties as a Police Officer for two years after the injury, and before the pain returned, [he] is not disabled from the October 2011 incident within the plain meaning of the Line-of-Duty disability statute." Snarski's hip, shoulder, and knee injuries sustained in the incident did not render him disabled or unable to perform his duties as a police officer.

¶ 44    Snarski moved for review and reversal of the Board's decision. The circuit court affirmed the Board's finding that Snarski was not disabled due to his right hip injury. However, it reversed the Board's determination that Snarski's disabling back injury was unrelated to the October 2011 incident. The court found that the decision was against the manifest weight of the evidence where the Board "relied heavily on Dr. Samo's IME to the exclusion of other medical opinions and documentation indicating that [Snarski's] preexisting back condition was aggravated by the October 2011 incident."

¶ 45                                    Analysis

¶ 46    The Board argues its finding Snarski eligible for non-duty disability benefits was not against the manifest weight of the evidence.

¶ 47    The Administrative Review Law, 40 ILCS 5/3-148 (West 2018), governs judicial review of pension board determinations. We review the Board's decision, not the circuit court's. *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 531 (2006). Our review "extends to all questions of fact and law presented by the entire record." *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 504 (2007). We reverse the Board's fact findings only should they be against the manifest weight of the evidence. *Marconi*, 225 Ill. 2d at 534. We do not reweigh the evidence or determine the facts independently. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88 (1992). We will affirm when the record contains sufficient evidence to support the Board's decision. *Marconi*, 225 Ill. 2d at 543.

¶ 48    Section 3-114.1(a) of the Pension Code provides for line-of-duty disability benefits when a police officer suffers an injury "incurred in or resulting from the performance of an act of duty" and is "found to be physically or mentally disabled for service in the police department." 40 ILCS 5/3-114.1(a) (West 2018). To obtain a line-of-duty disability benefit, the officer "need not prove that a duty-related accident is the sole cause, or even the primary cause, of [] disability." *Luchesi v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 333 Ill. App. 3d 543, 550 (2002). Rather, the officer must show that the duty-related injury "is a causative factor contributing" to disability. *Id.* As such, "a disability pension may be based upon the line-of-duty aggravation of a preexisting physical condition." *Wade*, 226 Ill. 2d at 505.

¶ 49    The majority of physicians who conducted an IME found Snarski disabled due to his lower back pain. The Board agreed. Snarski's medical history indicated a "Herniated disc L5" before the October 2011 incident. Even so, of the three original examining physicians, only Dr. Stamelos addressed whether the October 2011 incident aggravated Snarski's preexisting condition. In Dr.

Stamelos's opinion, Snarski sustained an "aggravation of underlying facet arthropathy and degenerative disc of the lumbar spine following the altercation of October 2011." Due to persistent back pain, Snarski had "significant limitations regarding standing, running, jumping or any heavy lifting activities." Dr. Stamelos concluded that Snarski "would not be able to perform all of the duties and functions of a police officer," and these medical problems were due to his "police service *** in October of 2011."

¶ 50    In a supplemental letter to the Board, Dr. Stamelos agreed with the conclusion of Snarski's treating physician, Dr. Lorenz, that his "continued back pain and sacroiliac discomfort was an aggravation of a preexisting condition" attributable to the incident. Dr. Stamelos's opinion has further support from Dr. Salehi, who conducted an IME for Snarski's workers' compensation claim. Dr. Salehi noted the "[s]ignificant facet arthropathy at L5-S1" and, like Dr. Stamelos, referred to Dr. Lorenz's conclusion that Snarski "had an aggravation of a degenerative condition secondary to a work injury." Dr. Salehi opined that Snarski's back injury was "consistent with having resulted in aggravation of a preexisting lumbosacral spondylosis."

¶ 51    Neither Dr. Suchy nor Dr. Levin provided opinions contradicting Dr. Stamelos's well-supported conclusion that Snarski's back pain resulted from an aggravation of a preexisting condition. They did not mention Snarski's preexisting herniated disc, even though they had reviewed his medical records. Regarding Snarski's back pain, Dr. Suchy noted that an MRI performed in January 2015 only showed "multilevel degenerative disc disease with bulging discs." He concluded, without further explanation, that "[t]he low back problem is not related to this work but to a prior incident."

¶ 52   Dr. Levin focused on Snarski's "right shoulder and right hip work-related injuries." He stated that Snarski started feeling pain "in other parts of his body including the neck and low back area," saw a rheumatologist, "and has been diagnosed with Lupus and has a positive ANA." In Dr. Levin's opinion, Snarski had incurred "a new injury with back and entire body pain" due to an autoimmune disorder. Dr. Levin concluded that Snarski's back injury is "related to the possibility of an elevated ANA and Lupus, which are not related to an injury of October 14, 2011." But, about six months after Dr. Levin's report, Snarski's rheumatologist Dr. Francis stated that Snarski had a "false Positive ANA" and did not have any autoimmune disorders including lupus. So, Snarski's back pain could not be attributed to an autoimmune disease.

¶ 53   Seeking another opinion, the Board asked Dr. Samo to examine Snarski. The Board gave his report the greatest weight because he reviewed the reports of Drs. Suchy, Levin, and Stamelos, and Snarski's medical records.

¶ 54   While Dr. Samo acknowledged Snarski's preexisting herniated disc, he disagreed that Snarski aggravated the condition during the October 2011 incident. He found it significant that Snarski did not report consistent lower back pain until May 2013, more than 1½ years after the incident. Dr. Samo concluded that the delay in the onset of symptoms indicated no causal relationship existed between Snarski's back pain and the incident. Had Snarski aggravated a preexisting back condition, he would have been symptomatic within 24 hours.

¶ 55   Except Dr. Samo's opinion is not supported by the record. According to Snarski's medical records, he experienced low back pain before May 2013. He reported low back pain to Dr. Baubly in March 2012, and mentioned back pain to Dr. Domb in September 2012. Dr. Bardfield's notes

in September 2013, indicated Snarski had been experiencing "low back pain" for 23 months due to an injury at work. That timeframe includes the date of the incident.

¶ 56    Although Snarski did not immediately complain of back pain to his treating physicians, Dr. Salehi opined that "[h]is lower back pain might not have been raised as an issue earlier on after the accident because of the distracting pain in the right hip region." As Dr. Domb noted some five months after hip surgery, Snarski was "doing much better with his hip" with mild pain, but complained of low back pain. Dr. Samo ignores Dr. Salehi's opinion.

¶ 57    Moreover, Dr. Samo ignores the finding of Snarski's treating physician, Dr. Lorenz, that Snarski suffered "an aggravation of some degenerative condition secondary to a work incident." Both Drs. Stamelos and Salehi referred to Dr. Lorenz's opinion in concluding that Snarski's back pain resulted from an aggravation of a preexisting condition attributable to the October 2011 incident. Dr. Samo dismissed Dr. Stamelos's opinion as "likely due to the history he was given" by Snarski and identified inconsistencies regarding what Snarski had told him and the information in the medical records. He believed Snarski's statements could not be entirely trusted. Whether Dr. Samo viewed Snarski as credible is irrelevant; the record shows Dr. Stamelos formed his opinion relying primarily on Dr. Lorenz's notes and Snarski's medical records.

¶ 58    Dr. Samo's silence on the opinions of Drs. Salehi and Lorenz points to his opinion not accounting for significant portions of the medical records. Thus, we find that the Board erred when it gave the "greatest weight" to Dr. Samo's opinion. See *Wade*, 226 Ill. 2d at 506-07 (finding Board erred in assigning greater weight to physician's opinion where his findings were not supported by record, and he failed to consider relevant evidence).

¶ 59 The Board also found that the October 2011 incident did not aggravate Snarski's preexisting back condition because he did not complain of back pain until months later, and he was able to perform "full and unrestricted duty" as a police officer from 2012 to 2014. This finding disregards evidence in the record.

¶ 60 The Board did not address Dr. Salehi's opinion that immediately after the incident, Snarski's back pain was most likely masked by the pain of his significant hip injury. The record demonstrates that after his hip healed, Snarski reported low back pain. Additionally, Snarski did not return to the same job after his injury. Although Dr. Domb cleared Snarski for unrestricted duty, in 2012, Snarski became a detective, a less physically demanding position. Dr. Lorenz stated in February 2014 that he did not place restrictions on Snarski since he worked "mainly in the office." Snarski continued reporting pain to his treating physicians from 2012 to 2014. When his pain worsened in March 2014, Dr. Lorenz changed his recommendation from no work restrictions to "light duty." Snarski's ability to work different jobs within the police department reflected an accommodation of his condition, not a lack of impairment.

¶ 61 While our review of the Board's determination is under the manifest weight of the evidence standard, our deference "is not boundless." *Id.* at 507. Accordingly, "[a] reviewing court will not hesitate to grant relief where," as in this case, "the record does not show evidentiary support for the agency's determination." *Bowlin v. Murphysboro Firefighters Pension Board of Trustees*, 368 Ill. App. 3d 205, 212 (2006). We find the Board's determination against the manifest weight of the evidence and agree with the circuit court that Snarski is entitled to a line-of-duty disability pension.

¶ 62 Affirmed.